USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/15/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

                              Plaintiff,

-against-

ANDREA AYERS

                              Defendant.

21-cr-440-02 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

      Pro se Defendant Andrea Ayers ("Defendant" or "Ayers") moves for a sentence reduction pursuant to 18 U.S.C. § 3553(a), citing the allegedly "unduly punitive, inhumane, and psychologically damaging conditions" she experienced while housed at the Metropolitan Detention Center ("MDC") in Brooklyn. (ECF No. 151, Motion ("Mot.") at 1.) Defendant specifically requests that, in light of the atypical and extreme conditions of confinement she allegedly endured at the MDC, the Court reduce her total term of imprisonment or, alternatively, convert the remainder of her custodial sentence to supervised release or home confinement. (*Id.* at 2.) For the reasons set forth below, the Court DENIES Defendant's motion for a downward sentencing variance.

BACKGROUND

    A. Factual Background

      On April 2024, the Court sentenced Defendant Andrea Ayers to 42 months' imprisonment following her guilty plea to conspiracy to commit wire fraud in connection with a scheme to defraud a federal pandemic relief program. (*See* ECF No. 147, Judgment.) Between June and July 2020, Andrea Ayers, along with co-defendants Alicia Ayers and Traci Proctor, engaged in a coordinated scheme to defraud the U.S. Small Business Administration's Economic Injury

Disaster Loan ("EIDL") Program. (Compl. at 4-8.) They conspired to obtain federal relief funds by submitting fraudulent online applications using the personal information of approximately 300 individuals. (*Id*. at 4.) The scheme involved transmitting false representations to the SBA through interstate electronic communications, including fabricated information about business ownership, employee numbers, and revenues. (*Id*.) In total, approximately 315 fraudulent applications were submitted, seeking over $3 million and resulting in the disbursement of roughly $1.69 million, portions of which were kicked back to the Defendants. (*Id*. at 4–5.)

Defendant voluntarily surrendered in August 2024 and was housed at the MDC in Brooklyn for approximately eight months while awaiting judgment before being transferred to Alderson Federal Prison Camp ("FPC"). (Mot. at 2.) In her motion, Defendant alleges that during her time at MDC she endured "unduly punitive, inhumane, and psychologically damaging conditions," including lockdowns, extreme temperature fluctuations, and inadequate hygiene and medical care. (*Id*. at 1.) As attachments to her motion, Ayers submitted copies of what appears to be a BP-8 Informal Resolution form and a BP-9 "Request for Administrative Remedy" that she had filed with the warden on March 7, 2025, seeking application of FSA time credits. (*Id.* at 4-5.) While her BP-8 form was signed by the Unit Manager and Counselor, her attached copy of the BP-9 neither included a response nor signature from the Warden. (*Id*. at 5.) Ayers is currently serving her sentence at Alderson FPC, with a projected release date of June 6, 2027. (Opp. at 3.)

### B. Procedural History

The Government filed a complaint against Ms. Ayers on March 21, 2021, for conspiracy to commit wire fraud (Count I), wire fraud (Count II), false statements (Count III), and aggravated identity theft (Count IV). (ECF No. 2, Complaint ("Compl.") at 1-3.) On April 26, 2024, the Court imposed a total term of 42 months' imprisonment for Ms. Ayers (*See generally* Judgment.) Defendant submitted several letters to the Court over the course of the proceedings, addressing

issues related to her finances (ECF Nos. 127–128), medical accommodations (ECF No. 139), the Court's final judgment (ECF No. 144), and the calculation of First Step Act ("FSA") time credits (ECF No. 148). Most recently, on September 8, 2025, Defendant filed an instant pro se motion seeking a reduction of her sentence pursuant to 18 U.S.C. § 3553(a), based on the conditions of her confinement at MDC. (*See generally* Mot.) On September 24, 2025, the Government filed a letter in opposition. (ECF No. 157, Opposition ("Opp."))

## LEGAL STANDARD

Under 18 U.S.C. § 3582(c)(1)(A), as amended by the FSA, a court may reduce a term of imprisonment only after the defendant has exhausted administrative remedies, and only if, after considering the factors set forth in 18 U.S.C. § 3553(a), it finds that "extraordinary and compelling reasons" warrant such a reduction and that the reduction is consistent with applicable Sentencing Commission policy statements. *See United States v. Saladino*, 7 F.4th 120, 124 (2d Cir. 2021); *United States v. Keitt,* 21 F.4th 67, 71 (2d Cir. 2021) (finding that both "extraordinary and compelling reasons" and support of Section 3553(a) factors are required for relief.) The exhaustion requirement is mandatory and not subject to judicial waiver. *See Ross v. Blake*, 578 U.S. 632, 638–39 (2016). Once exhaustion is satisfied, the Court must determine whether the defendant has demonstrated: (1) extraordinary and compelling reasons; (2) that a reduction is consistent with U.S.S.G. § 1B1.13 (the relevant Sentencing Guidelines policy statement), which is now binding and requires, among other things, that the defendant not pose a danger to the community; and (3) that the § 3553(a) factors weigh in favor of a reduction. *See* U.S.S.G. §§ 1B1.13(a)(2), (b).

Application of the § 3553(a) factors requires the Court to consider, among other things, "the nature and circumstances of the offense and the history and characteristics of the defendant," the need "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment," "to afford adequate deterrence," and "to protect the public from further crimes

of the defendant." 18 U.S.C. § 3553(a); *United States v. Daugerdas*, 613 F. Supp. 3d 807, 812 (S.D.N.Y. 2020). The defendant bears the burden of satisfying each of these requirements. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992).

## DISCUSSION

The Court DENIES Andrea Ayers's motion for a sentence reduction because she has not exhausted administrative remedies, fails to show extraordinary and compelling circumstances, and the 18 U.S.C. § 3553(a) factors weigh against reduction in her sentence.

### A. No Exhaustion of Administrative Remedies

Ayers fails to demonstrate she exhausted administrative remedies. Under § 3582(c)(1)(A), a defendant may seek a sentence reduction only after either (1) fully exhausting administrative appeals within the BOP regarding a sentence reduction, or (2) thirty days have passed since the warden received such a request. *United States v. Saladino*, 7 F.4th 120, 123 (2d Cir. 2021). Under BOP regulations, an inmate must follow a four-step process to exhaust administrative remedies: (1) raise the issue informally with staff via a BP-8; (2) file a BP-9 to the warden; (3) if denied or if the warden fails to respond after 20 days, appeal to the Regional Director using a BP-10; and (4) if still denied, file a final appeal to the BOP's Central Office via a BP-11. *United States v. D'Acunto*, No. 18 CR 14 (VM), 2020 WL 1904007, at *1 (S.D.N.Y. Apr. 16, 2020); *Dov v. Warden*, No. 21 CIV. 8570 (SLC), 2022 WL 17730112, at *7 (S.D.N.Y. Dec. 16, 2022) ("If the request is denied or the Warden fails to respond within 20 days, the third step is to appeal to the BOP Regional Director.") Although Ayers attached a BP-8 Informal Resolution form and a BP-9 "Request for Administrative Remedy," she stopped at step two. Her BP-9 attachment was unsigned by the warden; therefore, Ayers should have proceeded to filing a BP-10 appeal to the Regional Director and then a BP-11 to the BOP's Central Office.

Even under the thirty-day-lapse provision, assuming the warden received Ayers's BP-9 form and this attachment was the final submission of the form, Ayers still fails to satisfy the requirements under § 3582(c)(1)(A). Her BP-9 form—unsigned by the warden and limited to the computation of First Step Act program credits—did not identify any "extraordinary and compelling reasons" that would warrant a sentence reduction or excuse compliance with the exhaustion requirement. Because Ayers neither submitted a qualifying sentence reduction request, as discussed in greater length below, nor pursued the BOP's administrative appeal process to completion, her motion must be denied for failure to exhaust administrative remedies.

### B. Failure to Show Extraordinary and Compelling Reasons for Sentence Reduction

Even if Ayers had exhausted administrative remedies, she has not demonstrated any "extraordinary and compelling reasons" to permit a sentence reduction. Ayers's allegations consist primarily of generalized descriptions of MDC conditions, such as lockdowns, temperature fluctuations, hygiene issues, including rodent infestations and unsanitary cell conditions, and delayed medical conditions. (*See* Mot. at 2.) However, such conditions do not constitute "extraordinary and compelling" circumstances especially since Ayers did no allege that these conditions continued after her transfer to Alderson FPC. *See United States v. Sarnelli,* No. 22 CRIM. 116 (NRB), 2025 WL 268678, at *5 (S.D.N.Y. Jan. 22, 2025) (rejecting defendant's claim that restrictive lockdown conditions and limited outdoor time constituted "extraordinary and compelling" circumstances where such circumstances did not continue after his facility transfer.) While courts in this Circuit have acknowledged the harsh conditions of confinement at the MDC, those conditions—standing alone—have been found insufficient to warrant a sentence reduction where they were already accounted for at the time of sentencing. *See United States v. O'Berry*, No. 18 Cr. 277 (PAE), 2024 WL 5244936, at *6 (S.D.N.Y. Dec. 30, 2024) (finding that a defendant could not rely on harsh MDC conditions to justify a sentence reduction where such conditions had

5

already been considered at sentencing). Here, the Court similarly took those conditions into account when imposing Ayers's sentence. Although the Advisory Guidelines range was 63 to 78 months of imprisonment, the Court sentenced Ayers to 42 months—a term substantially below the Guidelines range. (ECF 85, Final Presentence Investigation Report ("PSR") at 26.)

Ayers's allegations are also conclusory and nonspecific; she fails to connect her claims of inadequate medical care, exposure to violence, or lockdown conditions at the MDC to any particularized events or identifiable injuries. *See United States v. Farmer*, No. 19-CR-427 (LTS), 2022 WL 47517 at *4 (S.D.N.Y. Jan. 5, 2022) (finding that "generalized statements about the conditions of confinement do not constitute compelling reasons for compassionate release.") Ayers further fails to allege that she was subjected to sexual or physical abuse while in custody within the meaning of U.S.S.G. § 1B1.13(b)(4), nor does she provide individualized evidence of harm or family circumstances. Therefore, Defendant has not demonstrated any "extraordinary and compelling reasons" warranting a sentence reduction.

### C. The 18 U.S.C. § 3553(a) Factors Weigh Against Sentence Reduction

The Court further finds that the sentencing factors set forth in 18 U.S.C. § 3553(a) weigh against granting Ayers early release. Application of § 3553(a) requires the Court to consider the offense's nature, the defendant's history, and the need for punishment, deterrence, respect for the law, and public protection. 18 U.S.C. § 3553(a). Ayers's total offense level was 26, and her advisory Guidelines range 63 to 78 months. (PSR ¶¶ 42, 92.) Although the Court imposed a sentence of 42 months—well below the guideline range—the seriousness of her conduct remains substantial. Over the course of several weeks in 2020, Ayers organized and led a conspiracy that used the identities of approximately 300 individuals to submit more than 300 fraudulent EIDL applications, seeking over $3 million in pandemic-relief funds. (PSR ¶¶ 18–20, 23.) The scheme resulted in actual losses exceeding $1.69 million to the U.S. Small Business Administration, funds

intended to assist small businesses struggling during the COVID-19 crisis. (*Id.*) Her role as a leader who recruited participants and collected kickbacks demonstrates both planning and exploitation of a program designed to help those in need. *See United States v. Broadus*, 2020 WL 3001040, at 3 (S.D.N.Y. June 4, 2020) (denying compassionate release where a defendant's leadership in a serious fraud undermined respect for the law).

While Ayers has no prior criminal convictions and complied with pretrial supervision, those mitigating factors were already considered at sentencing. A further reduction would not reflect the seriousness of the offense, promote respect for the law, provide just punishment, or afford adequate deterrence. *See* 18 U.S.C. § 3553(a)(2). Given the magnitude of the loss, the number of victims, and Ayers's leadership role in orchestrating the fraud, sentence reduction would undermine these statutory purposes. Accordingly, the § 3553(a) factors weigh strongly against reducing her sentence.

In sum, the Court DENIES Ayers's motion for sentence reduction because she has not exhausted administrative remedies, fails to show extraordinary and compelling circumstances warranting a downward sentencing variance, and the 18 U.S.C. § 3553(a) factors weigh against a sentence reduction.

## CONCLUSION

For the reasons stated above, Defendant Andrea Ayers's motion for a downward sentencing variance pursuant to 18 U.S.C. § 3553(a) is DENIED. The Clerk of Court is respectfully directed to mail a copy of this Opinion to the *pro se* Defendant (#35921509) at FPC Alderson, Unit B1, P.O. Box A, Alderson, WV 24910 and to show proof of service on the docket.

Dated:   October 15, 2025
         White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge